[818 NE2d 1140, 785 NYS2d 399]

BLUE CROSS AND BLUE SHIELD OF NEW JERSEY, INC., Now Known as HORIZON HEALTHCARE SERVICES, INC., Doing Business as BLUE CROSS BLUE SHIELD OF NEW JERSEY and Others, et al., Respondents, v PHILIP MORRIS USA INCORPORATED et al., Appellants, et al., Defendants.

Argued September 7, 2004; decided October 19, 2004

## POINTS OF COUNSEL

*Arnold & Porter*, Washington, D.C. (*Murray R. Garnick* and *David S. Eggert* of counsel), for appellants. I. General Business Law § 349 incorporates the rule barring direct claims by insurers to recover for injuries caused to their subscribers. (*B & F Bldg. Corp. v Liebig*, 76 NY2d 689; *Associated Gen. Contrs. of Cal., Inc. v California State Council of Carpenters*, 459 US 519; *Holmes v Securities Inv. Protection Corp.*, 503 US 258; *United States v Standard Oil of Cal.*, 332 US 301; *Laborers Local 17 Health & Benefit Fund v Philip Morris, Inc.*, 191 F3d 229; *Mobile Life Ins. Co. v Brame*, 95 US 754; *Ferguson v Green Is. Contr. Corp.*, 36 NY2d 742; *Baker v Sterling*, 39 NY2d 397; *Longo v Butler Equities II*, 278 AD2d 97; *New Castle Siding Co. v Wolfson*, 97 AD2d 501, 63 NY2d 782.) II. General Business Law § 349 requires individualized proof of causation and damages. (*Desiano v Warner-Lambert Co.*, 326 F3d 339; *Small v Lorillard Tobacco Co., Inc.*, 252 AD2d 1; *Geiger v American Tobacco Co.*, 277 AD2d 420; *Barnes v American Tobacco Co.*, 161 F3d 127; *Castano v American Tobacco Co.*, 84 F3d 734; *Carnegie v H&R Block*, 269 AD2d 145; *Eastern States Health & Welfare Fund v Philip Morris Inc.*, 188 Misc 2d 638; *In re Fibreboard Corp.*, 893 F2d 706; *Broussard v Meineke Discount Muffler Shops, Inc.*, 155 F3d 331.)

*Dewey Ballantine LLP,* New York City (*Paul J. Bschorr, Joseph Angland, Michael C. Hefter, Robert J. Morrow* and *Alexander M. Kayne* of counsel), for respondent. I. Empire Healthchoice, Inc. has standing to assert claims on its own behalf under General Business Law § 349 so long as the violative conduct affects consumers. (*Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank,* 85 NY2d 20; *Securitron Magnalock Corp. v Schnabolk,* 65 F3d 256; *Rooney v Tyson,* 91 NY2d 685; *Braschi v Stahl Assoc. Co.,* 74 NY2d 201; *Chianese v Meier,* 285 AD2d 315; *Bingham v New York City Tr. Auth.,* 99 NY2d 355; *Goshen v Mutual Life Ins. Co. of N.Y.,* 98 NY2d 314; *Gaidon v Guardian Life Ins. Co. of Am.,* 96 NY2d 201; *Hanover Shoe, Inc. v United Shoe Mach. Corp.,* 392 US 481; *Karlin v IVF Am.,* 93 NY2d 282.) II. Use of aggregate proof to establish Empire Health-choice, Inc.'s direct claim under General Business Law § 349 was proper. (*Stutman v Chemical Bank,* 95 NY2d 24; *Small v Lorillard Tobacco Co., Inc.,* 252 AD2d 1, 94 NY2d 43; *Erie R.R. Co. v Tompkins,* 304 US 64; *Muller v Eno,* 14 NY 597; *Otto Gerdau Co. v Bowne-Morton Stores,* 1 AD2d 581; *Bond Elec. Corp. v Gold Seal Elec. Co.,* 244 App Div 206, 271 NY 461; *Merco, Inc. v Schranze,* 21 Misc 2d 743; *Texpor Traders, Inc. v Trust Co. Bank,* 720 F Supp 1100; *In re Peterson,* 253 US 300; *Czarnikow-Rionda Co. v West Mkt. Grocery Co.,* 21 F2d 309.)

*Herzfeld & Rubin, P.C.,* New York City (*Michael Hoenig, Aaron D. Twerski* and *Miriam Skolnik* of counsel), and *Hugh F. Young, Jr.,* Reston, Virginia, for Product Liability Advisory Council, Inc., amicus curiae. General Business Law § 349, which requires, inter alia, proof of injury, should not be read as an insurer protection statute permitting insurers to directly assert remote claims based on deceptive practices which do not lead to any loss or injury to the insurers. Rather, the carriers should be limited to pursuing traditional subrogation rights, a claim which Empire Healthchoice, Inc. failed to prove here. (*Ollendorff Watch Co. v Pink,* 279 NY 32; *Medical Malpractice Ins. Assn. v Community Gen. Hosp.,* 73 AD2d 867; *Orient Mut. Ins. Co. v Wright,* 23 How [64 US] 401; *Great Am. Ins. Co. v United States,* 575 F2d 1031; *Federal Ins. Co. v Arthur Andersen & Co.,* 75 NY2d 366; *Aetna Life Ins. Co. v Town of Middleport,* 124 US 534; *Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co.,* 240 NY 37; *Wager v Providence Ins. Co.,* 150 US 99; *Travelers Cas. & Sur. Co. v Certain Underwriters at Lloyd's of London,* 96 NY2d 583; *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank,* 85 NY2d 20.)

*Eliot Spitzer, Attorney General,* New York City (*Caitlin J. Hal-*

ligan, *Thomas G. Conway, Robert H. Easton* and *Jane M. Azia* of counsel), amicus curiae. General Business Law § 349 (h) requires only a practical or reasonable connection between a defendant's unlawful conduct and a plaintiff's injury. (*Laborers Local 17 Health & Benefit Fund v Philip Morris, Inc.,* 191 F3d 229, 528 US 1080; *Holmes v Securities Inv. Protection Corp.,* 503 US 258; *Desiano v Warner-Lambert Co.,* 326 F3d 339; *Stutman v Chemical Bank,* 95 NY2d 24; *New York v Feldman,* 210 F Supp 2d 294; *Securitron Magnalock Corp. v Schnabolk,* 65 F3d 256; *Excellus Health Plan, Inc. v Tran,* 287 F Supp 2d 167; *Gaidon v Guardian Life Ins. Co. of Am.,* 94 NY2d 330; *Small v Lorillard Tobacco Co., Inc.,* 94 NY2d 43; *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank,* 85 NY2d 20.)

*Kaye Scholer LLP,* New York City (*David Klingsberg, Steven Glickstein* and *Maris Veidemanis* of counsel), for Pharmaceutical Research and Manufacturers of America, amicus curiae. I. The proposed new derivative cause of action under General Business Law § 349 could produce a "tidal wave of litigation" against pharmaceutical companies. (*Ultramares Corp. v Touche,* 255 NY 170; *McNulty v City of New York,* 100 NY2d 227; *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank,* 85 NY2d 20; *Enright v Eli Lilly & Co.,* 77 NY2d 377; *Laborers Local 17 Health & Benefit Fund v Philip Morris, Inc.,* 191 F3d 229; *Stutman v Chemical Bank,* 95 NY2d 24; *Southern Pac. Co. v Darnell-Taenzer Lbr. Co.,* 245 US 531; *Fisher v Qualico Contr. Corp.,* 98 NY2d 534; *Albala v City of New York,* 54 NY2d 269; *Matter of Bridgestone/Firestone, Inc.,* 288 F3d 1012.) II. Eliminating the requirement of individualized proof of harm would compound the problem, giving insurers far greater leverage against pharmaceutical manufacturers than individual product users have. (*Goshen v Mutual Life Ins. Co. of N.Y.,* 98 NY2d 314; *Martin v Hacker,* 83 NY2d 1; *Stutman v Chemical Bank,* 95 NY2d 24; *In re American Med. Sys., Inc.,* 75 F3d 1069.)

### OPINION OF THE COURT

CIPARICK, J.

Plaintiff Empire Blue Cross and Blue Shield is one of several Blue Cross plans to commence this action against defendant tobacco companies alleging that defendants engaged in decep-

tive practices designed to mislead the public regarding the harmful and addictive properties of cigarette smoking.[1]

The complaint, lodged in the United States District Court for the Eastern District of New York, raised various federal and state claims. By the time of trial, the remaining claims consisted of direct and subrogated actions for violations of the federal Racketeer Influenced and Corrupt Organizations Act (RICO) (18 USC § 1962), direct and subrogated actions for engaging in deceptive business practices in violation of New York General Business Law § 349, and a subrogation claim for common-law fraud.

The jury determined that Empire had proven its section 349 claims against defendant tobacco companies (with the exception of defendant British American Tobacco Co., Ltd.), and awarded Empire $17,782,702 on its direct action and $11,829,784 on its subrogated action.[2] After the verdict, defendants moved for judgment as a matter of law (see Fed Rules Civ Pro rule 50 [b]). The District Court denied the motion, finding that Empire's injury was not too remote to allow recovery under section 349 and that victims of indirect injuries could recover under the statute (see Blue Cross & Blue Shield of N.J., Inc. v Philip Morris, Inc., 178 F Supp 2d 198, 230-232 [ED NY 2001]).

The United States Court of Appeals for the Second Circuit reversed the portion of the jury award on Empire's section 349 subrogation claim, because Empire failed to identify individually injured plan members for the purpose of allowing defendants to investigate and defend the action (see Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc., 344 F3d 211, 217-218 [2003]). The court further found that Empire's standing to bring an action under section 349 was not affected by the fact that it is not a consumer, and that Empire's aggregate proof on the issues of causation and damages was legally sufficient—unless individualized proof is required by section 349. The Second Circuit found, however, that there were unresolved issues of New York law that would be determinative of the present appeal, and certified the following questions for this Court's review:

---

1. The United States District Court ordered Empire's claims to be tried first, separate from the claims of the other Blue Cross plans (see Blue Cross & Blue Shield of N.J., Inc. v Philip Morris, Inc., 113 F Supp 2d 345, 353 [ED NY 2000]). Thus, only Empire's claims are at issue for purposes of this appeal.

2. The District Court subsequently awarded plaintiff attorneys' fees in the amount of $37,841,054.22 (see Blue Cross & Blue Shield of N.J., Inc. v Philip Morris, Inc., 190 F Supp 2d 407, 429 [ED NY 2002]).

"1. Are claims by a third party payer of health care costs seeking to recover costs of services provided to subscribers as a result of those subscribers being harmed by a defendant's or defendants' violation of N.Y. Gen. Bus. Law § 349 too remote to permit suit under that statute?

"2. If such an action is not too remote to permit suit, is individualized proof of harm to subscribers required when a third party payer of health care costs seeks to recover costs of services provided to subscribers as a result of those subscribers being harmed by a defendant's or defendants' violation of N.Y. Gen. Bus. Law § 349?" (344 F3d at 229.)

We accepted certification (100 NY2d 636 [2003]) and answer the first question in the affirmative, rendering the second question academic.

## Discussion

General Business Law § 349 is a consumer protection statute designed to protect against "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state" (General Business Law § 349 [a]). Though originally intended to be enforced by the Attorney General (*see* General Business Law § 349 [b]), the statute was amended in 1980 to include a private right of action (L 1980, ch 346). The amendment was intended to afford additional protection for consumers, allowing them to bring suit on their own behalf without relying on the Attorney General for enforcement (*see* Assembly Mem in Support, Bill Jacket, L 1980, ch 346; *see also* Mem of Atty Gen, Bill Jacket, L 1980, ch 346 [suggesting that the Attorney General must focus on those cases that have a widespread effect and that the measure would allow individuals to prosecute remaining actions]). Thus, "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions" (General Business Law § 349 [h]).

As we have previously noted, the scope of the statute "is intentionally broad, applying 'to virtually all economic activity' " (*Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 324 [2002], quoting *Karlin v IVF Am.*, 93 NY2d 282, 290 [1999]). In order to make out a valid section 349 claim, a plaintiff must al-

lege both a deceptive act or practice directed toward consumers and that such act or practice resulted in actual injury to a plaintiff (*see Small v Lorillard Tobacco Co., Inc.*, 94 NY2d 43, 55-56 [1999]; *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20, 25-26 [1995]). The deceptive act or practice alleged here is that defendants, knowing that smoking causes cancer, misrepresented the dangers of smoking and engaged in a campaign to encourage consumers to smoke. Plaintiff further alleges that, as a consequence, medical costs increased, resulting in actual damages to plaintiff insurers who bore such costs.

Under common law, an insurer or other third-party payer of medical expenditures may not recover derivatively for injuries suffered by its insured. Rather, the insurer's sole remedy is in equitable subrogation. "Subrogation is the principle by which an insurer, having paid losses of its insured, is placed in the position of its insured so that it may recover from the third party legally responsible for the loss" (*Winkelmann v Excelsior Ins. Co.*, 85 NY2d 577, 581 [1995] [citations omitted]; *see also Allstate Ins. Co. v Stein*, 1 NY3d 416 [2004]; *Great Am. Ins. Co. v United States*, 575 F2d 1031, 1033 [2d Cir 1978] ["There is not a single reported case in American jurisprudence . . . which holds that upon an insurance carrier's payment to its insured, the insurer becomes vested with a claim arising out of an implied contract of indemnity with the tortfeasor who caused the damage necessitating payment by the carrier to the insured. On the contrary, the authorities and the cases unanimously hold that the insurer's recovery is premised exclusively upon subrogation"]).

Nevertheless, plaintiff argues that, in enacting General Business Law § 349, the Legislature intended to abrogate the common-law rule and permit recovery for derivative injuries. But neither the text of the statute nor the legislative history reflect an intent by the Legislature to authorize insurers to bring their own direct (nonsubrogated) actions based upon injuries to their insureds. "It is axiomatic concerning legislative enactments in derogation of common law, and especially those creating liability where none previously existed, that they are deemed to abrogate the common law only to the extent required by the clear import of the statutory language" (*Morris v Snappy Car Rental, Inc.*, 84 NY2d 21, 28 [1994] [citation omitted]).

To be sure, the language of the statute permits recovery by any person injured "by reason of" a deceptive business practice

(§ 349 [h]). But we will not presume an intent to include recovery for derivative injuries within the scope of the statute in the absence of a clear indication of such intent from the Legislature. Indeed, we have warned against "the potential for a tidal wave of litigation against businesses that was not intended by the Legislature" (*Oswego*, 85 NY2d at 26). Moreover, allowing plaintiff's claim would effectively eliminate subrogation actions under section 349—a result which nothing in the legislative history shows was ever intended.

In holding that third-party payers cannot recover derivatively under the General Business Law, we recognize that section 349 is a broad, remedial statute and that the provision creating a private right of action employs expansive language. We are also mindful that the Attorney General asks us not to adopt an inflexible rule of proximate causation that would limit the tools and remedies available to protect consumers or undermine the State's power to redress deceptive consumer practices. In concluding that derivative actions are barred, we do not agree with plaintiff that precluding recovery here will necessarily limit the scope of section 349 to only consumers, in contravention of the statute's plain language permitting recovery by any person injured "by reason of" any violation (*see e.g. Securitron Magnalock Corp. v Schnabolk*, 65 F3d 256, 264 [2d Cir 1995], *cert denied* 516 US 1114 [1996] [allowing a corporation to use section 349 to halt a competitor's deceptive consumer practices]; Mem of Atty Gen, Bill Jacket, L 1980, ch 346 ["a business itself will be able to use the private right of action against another business engaged in deceptive practices and thereby obtain increased legal protection"]).

Plaintiff, in arguing that proximate cause is not required under General Business Law § 349 and that plaintiff should as a result prevail, confuses the concept of indirect injury with causation. An injury is indirect or derivative when the loss arises solely as a result of injuries sustained by another party. Although Empire actually paid the costs incurred by its subscribers, its claims are nonetheless indirect because the losses it experienced arose wholly as a result of smoking related illnesses suffered by those subscribers.

The cases cited by plaintiff are not to the contrary. For example, in *Catania v 124 In-To-Go, Corp.* (287 AD2d 476, 477 [2d Dept 2001], *lv dismissed* 97 NY2d 699 [2002]), the plaintiff—permitted to sue a tavern owner under the Dram Shop Act—was the party directly injured in an assault by an intoxicated

person (*see* General Obligations Law § 11-101). But no third party was allowed to sue derivatively to recover moneys expended to treat that injury.

Of course, it is beyond dispute that section 349 (h) permits an actually (nonderivatively) injured party to sue a tortfeasor. We hold simply that what is required is that the party actually injured be the one to bring suit. Empire was not directly injured in this sense.

What plaintiff characterizes as an issue of causation is better viewed as a question of standing. Properly framed, the issue is not whether the deceptive practice is a sufficient cause of the plaintiff's injury, but what types of injuries are cognizable under the statute. Plaintiff's injuries are not. We therefore hold that a third-party payer has no standing to bring an action under General Business Law § 349 because its claims are too remote.[3] In so holding, we do not leave plaintiff without remedy. As an insurer, Empire's traditional common-law remedy to recover excess amounts paid on behalf of an insured, arising from the misconduct of a third party, is an action in equitable subrogation.

We further reject Empire's argument that in view of the collateral source rule of CPLR 4545 (c), the effect of our decision is to immunize the tobacco companies from liability. The rule was enacted in 1986 in order to prevent duplicate recoveries for, among other things, costs of medical care (*see Fisher v Qualico Contr. Corp.*, 98 NY2d 534, 538-539 [2002]). This statute does not alter Empire's traditional remedy because "a defendant still may be held responsible in subrogation" (*Fisher*, 98 NY2d at 540). Although a subrogation action may be difficult for plaintiffs to prove—as they would be required to establish the elements of each subscriber's claim—it is the only remedy available to them. Insurers cannot sidestep their traditional remedy

---

3. We are thus in agreement with *A.O. Fox Mem. Hosp. v American Tobacco Co., Inc.* (302 AD2d 413, 414 [2d Dept 2003]) and *Eastern States Health & Welfare Fund v Philip Morris, Inc.* (188 Misc 2d 638, 646-647 [Sup Ct, NY County 2000]), which held that the plaintiffs' claims for deceptive trade practices were too remote to allow recovery because they were derivative of the harm to their patients/members. This outcome is also in accord with several other courts that recognize a remoteness bar to recovery under their state consumer protection statutes (*see e.g. Ganim v Smith & Wesson Corp.*, 258 Conn 313, 372-373, 780 A2d 98, 133-134 [2001]; *Oregon Laborers-Empls. Health & Welfare Trust Fund v Philip Morris Inc.*, 185 F3d 957, 968 [9th Cir 1999]; *compare Group Health Plan, Inc. v Philip Morris Inc.*, 621 NW2d 2, 9-10 [Minn 2001]).

of subrogation and sue directly for derivative injuries using a statute that creates a cause of action for a person directly injured.

Accordingly, the first certified question should be answered in the affirmative and the second certified question not answered upon the ground that it has been rendered academic.

Chief Judge KAYE and Judges G.B. SMITH, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.17 of the Rules of Practice of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question No. 1 answered in the affirmative and certified question No. 2 not answered upon the ground that it has been rendered academic.